**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **BEN JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL NO. 3:08CV324** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Ben Johnson, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for Social Security Disability (DIB) and Supplemental Security Income payments (SSI). The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 14) and motion for remand (docket entry no. 16) be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

DENIED; that Defendant's motion for summary judgment (docket entry no. 17) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI in August 2006, claiming disability due to cervical disc disease, arthritis and fluid on his right knee, dislocation of his knee, and arthritis in his right hand, with an alleged onset date of February 28, 2006. (R. at 34-38, 44.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 6-11, 12-15.) Plaintiff requested a hearing and on December 27, 2007, accompanied by counsel, he testified before an ALJ. (R. at 167-89.) On January 15, 2008 the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because, based on his age, education, work experience and residual function capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 165.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 150-52.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

3

F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

5

helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 160.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine and meniscal tears in the bilateral knees, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 160-61.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, but that he could only "occasionally reach overhead, climb steps, push, pull and kneel." (R. at 161.) Additionally, the ALJ found that the Plaintiff could not balance, crawl or climb ropes, ladders or scaffolding and should limit his exposure to heights and moving machinery. (R. at 161.) Finally, the ALJ noted that the Plaintiff "has no additional nonexertional impairments that significantly interfere with his ability to sustain attention and concentration, maintain attendance standards, or perform the above-noted activities on a sustained basis." (R. at 161.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as a furniture mover, laborer, dump truck driver, or hospital housekeeper because of the levels of exertion required in each position. (R. at 164.) At step five, after considering Plaintiff's age, education, work experience and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 165.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 165.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J., Pl.'s Mot. for Remand.) In support of his position, Plaintiff argues: (1) that the ALJ erred by not affording the proper weight to the opinions of Plaintiff's treating physician; (2) the ALJ erred by not properly applying the Medical Vocational Guidelines where Plaintiff cannot perform the substantial requirements of sedentary work; (3) the ALJ erred in making his determination because he failed to consider Plaintiff's non-exertional limitations; (4) that substantial evidence does not support the ALJ's conclusion that Plaintiff is not disabled under the Act where the ALJ improperly discounted Plaintiff's credibility. (Pl.'s Mem. in Supp. of Mot. for Summ. J. "Pl.'s Mem." at 15-26.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof "Def.'s Mem." at 8.)

**1.     Plaintiff contends that the ALJ erred by not affording the Plaintiff's treating physician's opinions controlling weight.**

Plaintiff contends that the ALJ did not assign proper weight to his treating physician's opinions, contending that greater weight should have been given because the objective medical evidence supports the physician's opinions. (Pl.'s Mem. at 15-17.) Specifically, the Plaintiff believes that in conducting the RFC analysis, more weight should have been afforded to Dr. Vanichkachorn's opinion that the Plaintiff is "limited in reaching in all directions."(Pl.'s Mem. at 15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

7

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultive examiners, or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

A review of the Record demonstrates that the ALJ properly and thoroughly considered the medical opinions of Plaintiff's treating physicians (R. at 160-61; 163-64.) It was the medical records and doctors' reports from Plaintiff's treating physicians that formed the basis for the ALJ's opinion that Plaintiff has the severe physical impairments of degenerative disc disease of the cervical spine and miniscal tears in the bilateral knees (R. at 160-61.) Additionally, the ALJ adopted a majority of the limitations that Dr. Vanichkachorn had recommended, including

8

finding that Plaintiff could occasionally kneel, push and pull, but that he could not balance or crawl. (R. at 145, 161.) In reaching such conclusions, the ALJ considered the medical records, progress reports, diagnostic tests and Plaintiff's surgical history. (R. at 160-61.) The ALJ did note, however, that many of Plaintiff's complaints of pain and alleged symptoms were not recorded in any of Plaintiff's treating physicians' records or progress reports. (R. at 161, 163.)

More specifically, Plaintiff contends that the ALJ erred by not adopting Dr. Vanichkachorn's opinion that Plaintiff is limited in reaching in all directions (Pl.'s Mem. at 15-17.) Plaintiff asserts that the ALJ erred by finding that Plaintiff "was unrestricted from reaching in sedentary work." (Pl.'s Mem. at 17.) Contrary to the assertion, however, the ALJ opinion does not state that Plaintiff is unrestricted in reaching in all directions; rather, in explaining his RFC determination, the ALJ stated that Plaintiff can "only occasionally reach overhead." (R. at 161.) Although not explicitly stated, it is clear from the ALJ's analysis that he did consider Dr. Vanichkachorn's opinions as to Plaintiff's ability to reach, by adopting them in part, but that he did not fully adopt Dr. Vanichkachorn's opinions because the doctor's recommended limitations were not substantiated in Plaintiff's medical records and description of daily activities. (R. at 164.)

A review of the Record supports this analysis, as many of Plaintiff's reported daily activities do not correlate with Dr. Vanichkachorn's recommendation that Plaintiff is limited in reaching in *all* directions. Plaintiff testified at the ALJ hearing that he lives in a two story house with his family, and that his two year old daughter stays with him during the day on most days. (R. at 172.) He also stated that he was able to drive his wife to the store, and when filling out the Daily Activities Questionnaire, he stated that he is able to drive himself to his doctor's appointments without any assistance. (R. at 66, 172.) In conjunction with his testimony that he

9

engages in activities that necessitate him being able to reach, the State Agency medical consultants found that Plaintiff had no manipulative limitations, including not being able to reach in all directions. (R. at 127.) Given Plaintiff's testimony as to his daily activities, as well as the State Agency medical consultant's findings, substantial evidence supports the ALJ's decision not to adopt Dr. Vanichkachorn's opinion that Plaintiff is limited in reaching *all* directions.

**2.      Plaintiff contends that the ALJ's determination that Plaintiff is not disabled under the Medical-Vocational Guidelines is not supported by substantial evidence**

Plaintiff further asserts that the ALJ erred in utilizing the Medical-Vocational Guidelines to determine that Plaintiff is not disabled under the Act. (Pl.'s Mem. at 17.) Specifically, Plaintiff asserts that he, by the ALJ's own admission, could not perform substantially all of the exertional requirements of sedentary work, and thus the ALJ should have utilized a Vocational Expert ("VE") to determine whether Plaintiff was disabled under the Act. (Pl.'s Mem. at 20-22.)

Prior to determining whether the Grids apply at the fifth step of the analysis, an ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1569; SSR 83-10. Based on the RFC determination, the ALJ must then consult the Grids to determine if the claimant meets a rule (or listing) in the Grids. 20 C.F.R. § 404.1569; SSR 83-10. The Grids catagorize jobs by their physical-exertion requirements,[6] namely, sedentary,[7] light,[8] medium, heavy, and very heavy. See

---

[6] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitations is an impairment-caused limitations which affects ones capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[8] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (rule 204.00). SSR 83-10; 20 C.F.R.. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled." Utilization of the Grids is predicated on the claimant suffering from exertional limitations and the Grids are not applicable if the claimant suffers solely from nonexertional limitations. 20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). The reasons for the rule is that nonexertional limitations may nevertheless limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2).

When analyzing a claimant's ability to perform sedentary work under the Grids, the ALJ must determine whether the claimant, based on his RFC, has any additional exertional limitations that may erode the sedentary occupational base. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(3); SSR 96-9p. Sedentary work "represents a significantly restricted range of work, and individuals with a maximum sustained work capability limited to sedentary work have

very serious functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(4). The Social Security Regulations and Rulings recognize that a finding of "disabled" may be appropriate for some individuals who are unable to perform a full range of sedentary work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(3); SSR 96-9p. However, these rules also clearly state that "the inability to perform a full range of sedentary work does not necessarily equate with a finding of 'disabled.'" See id. In order to determine if an individual's exertional limitations significantly erode the sedentary occupational base, the ALJ will examine the type and extent of additional exertional limitations the claimant suffers from, and compare those to the requirements noted for sedentary work. See id. The analysis "requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or educations providing for direct entry into skilled work." Id. In circumstances where the effect of additional exertional limitations on the occupational base is unclear, it may be appropriate for the ALJ to consult a VE. See SSR 96-9p.

Here, the issue is whether Plaintiff's exertional limitations, as recognized by the ALJ, of only occasionally being able to push, pull, kneel, and reach overhead as well as never being able to balance, crawl, climb ropes, ladders or scaffolds with limited exposure to heights and moving machinery, significantly erodes the sedentary occupational base. As explained previously, the sedentary occupational base involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). In comparing the Plaintiff's additional exertional limitations with the exertional

requirements of sedentary work, the ALJ concluded that the additional limitations have "little or no effect on the occupational base of sedentary work." (R. at 165.) A review of the relevant regulations and Social Security Rulings demonstrate that such a conclusion is proper. Social Security Ruling 96-9p sets forth guidelines an ALJ should follow in evaluating a claimant's ability to do less than a full range of sedentary work. Within those Guidelines, the Social Security Administration has explained which exertional limitations and restrictions would have an effect on the sedentary occupational base. See SSR 96-9p. The Euling explains that "[l]imitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base." Id. Similarly, the Ruling states that "[p]ostural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Id. Instead, the Ruling emphasizes that the sedentary occupational base will generally be eroded when a claimant's ability to lift or carry, manipulate items with his fingers and hands, or his ability to walk or stand is diminished beyond what is required for sedentary work. See id. None of Plaintiff's additional limitations significantly erode his ability to perform the required functions of sedentary work. As such, the ALJ's findings utilizing the Medical-Vocational Guidelines was proper, and as it is relatively clear that the sedentary occupational base was not significantly eroded, it was unnecessary for the ALJ to consult a VE in reaching a disability determination.

3.  **Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's non-exertional limitations.**

In addition to arguing that the ALJ erred in relying on the Medical-Vocational Guidelines in making his disability determination, Plaintiff argues that the ALJ improperly failed to consider Plaintiff's non-exertional limitations when conducting his analysis under the Guidelines. (Pl.'s Mem. at 22-23.) Specifically, Plaintiff argues that the evidence demonstrates that he has a limited education, struggles with reading and writing, and that as a result of his medical impairments, he has problems with memory loss. (Pl.'s Mem. at 22-23.) Given such nonexertional limitations, Plaintiff asserts that the ALJ's determination that Plaintiff could perform sedentary work was improper. (Pl.'s Mem. at 23.)

As explained earlier, the ALJ must consider a claimant's RFC, age, education and prior work experience when making a disability determination pursuant to the Guidelines. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1. When utilizing the Grids to analyze a claimant's abilities to perform sedentary work, illiteracy or inability to communicate in English has little significance in determining if the claimant's sedentary occupational base has been eroded. See 20 C.F.R. Pt. 404 Subpt. P, App. 2 § 201.00(h)(4)(I). While educational level is one of the factors considered by the Grid system, other educational or communicative limitations will rarely be a significant factor in the analysis. See id.; see also SSR 96-9p. The Social Security Administration has advised that basic communication is all that is necessary to perform unskilled, sedentary work. See SSR 96-9p. Indeed, "the ability to hear and understand simple oral instructions or to communicate simple information is sufficient. If the individual retains these basic communication abilities, the unskilled sedentary occupational base would not be significantly eroded." Id.

It is clear from the ALJ's opinion that he properly considered Plaintiff's relevant nonexertional limitations in making his disability determination pursuant to the Guidelines.

14

Pursuant to 20 C.F.R. § 404.1564 and § 416.964, the ALJ properly classified Plaintiff as having a limited education based on his testimony that he had only partially completed highschool. (R. at 165.) The ALJ also noted in his RFC analysis that Plaintiff had testified that he struggles with reading, writing and memory loss; however, the ALJ felt as though there was no evidence presented that supported the testimony. (R. at 162-63.) A review of the record supports such a conclusion as there are no medical records indicating that Plaintiff suffered from any nonexertional limitations as a result of his impairments. (R. at 163.) Additionally, Plaintiff himself provided two separate forms to the Social Security Administration indicating that he had no problem in reading and writing English, and he even listed reading as one of his hobbies and interests on the Function Report he submitted. (R. at 43, 65, 66, 90.) Given such facts, it is clear that the ALJ appropriately considered Plaintiff's relevant nonexertional limitations when making his disability determination pursuant to the Guidelines.

**4.     Plaintiff contends that substantial evidence does not support the ALJ's disability determination because the ALJ improperly discounted Plaintiff's credibility.**

Finally, Plaintiff asserts that the ALJ erred by failing to give proper weight to his subjective complaints of pain. (Pl.'s Mem. at 23.) Specifically, Plaintiff claims that the records of his treating physicians demonstrate that there are objective medical findings which support his complaints of pain. (Pl.'s Mem. at 24.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled.  See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, in support of his subjective complaints of pain and limitations as a result of his impairments, Plaintiff testified that he is in chronic pain, and often experiences pain and swelling in his extremities due to arthritis.  (R. at 176-77.)  Plaintiff was asked to describe his ability to walk and sit, and he stated that he could walk approximately one block, stand for about ten minutes and sit for a couple of hours at a time.  (R. at 178.)  When asked to rate his pain on a scale from zero to ten, Plaintiff testified that before the pain became excruciating, his pain was at a seven, but once he had taken his medication, it fell to a three or four.  (R. at 177.)  Plaintiff also indicated that he spends most of his day at home with his two-year old child, and although he was able to drive and prepare basic meals for himself and his two-year old, he still required some help with his personal care and stated that he spent most of his days laying in bed.  (R.61-63, 180-81.)

It is clear from the ALJ's opinion that he performed a thorough analysis of both the subjective and objective medical evidence presented to him in making his determinations as to Plaintiff's credibility and RFC.  The ALJ found that the "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (R. at 163.)  Specifically, the ALJ concluded that

17

Plaintiff's medical records and his description of his daily activities were inconsistent with the amount of pain Plaintiff allegedly experienced. (R. at 163.) For example, Plaintiff testified that he has trouble walking and that he has to elevate his legs several times a day. (R. at 178, 186). As the ALJ pointed out, while Plaintiff required treatment for meniscal tears in his bilateral knees in 2005, since that point there have been only intermittent complaints of pain and his medical records do not indicate that he was told to elevate his knees or use any assistive ambulatory device. (R. 135-41, 178-79.) Additionally, Plaintiff reported that he lives in a two story house where his bedroom is on the second floor, and is able to drive to the store and attend doctors appointments by himself. (R. at 64-65, 172-73.) Such circumstances contravene his assertions of disabling pain.

Similarly, the ALJ examined Plaintiff's complaints that he had limited use of his hands due to arthritis. Plaintiff testified that he had chronic pain in his hands and that his right hand would swell frequently. (R. at 176.) Due to this pain and swelling, Plaintiff stated that his hand will sometimes shake, and that he has trouble gripping and holding things. (R. at 185.) As the ALJ noted, Plaintiff did report some right hand pain in association with his neck spasms in January 2007; however, none of the medical records indicated that he needed treatment for his hands. (R. at 132, 163) Additionally, Plaintiff's treating physician noted on a Work Related Limitations Form that Plaintiff had no limitations when it came to handling, fingering or feeling with his hands. (R. at 145.)

It is clear that the ALJ conducted a thorough review of Plaintiff's medical records and subjective complaints, and while questioning the veracity of some of Plaintiff's statements, nonetheless gave deference to Dr. Vanichkachorn's opinions and Plaintiff's subjective complaints of pain, finding that Plaintiff was limited to sedentary work. (R. at 163-64.) The

ALJ performed the required Craig analysis and provided an explicit rationale to support his conclusions. The ALJ found that the Plaintiff had the severe impairments of degenerative disc disease of the cervical spine and meniscal tears in the bilateral knees, but that these impairments, either individually or in combination, did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 160-61.) The ALJ accordingly found that while such impairments could reasonably be expected to produce the alleged symptoms, the Plaintiff's statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible. (R. at 163.)

It is clear that the evidence in the record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of his pain was less then credible. The record additionally indicates that the ALJ, despite his credibility determinations, nevertheless gave deference to Plaintiff's subjective complaints of pain and medical history by finding that he was limited to performing only sedentary work. Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility and RFC determinations are based on substantial evidence in the record and should not, therefore, be overturned.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 14) and motion for remand (docket entry no. 16) be DENIED; that Defendant's motion for summary judgment (docket entry no. 17) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                           /s/
                                            DENNIS W. DOHNAL
                                            UNITED STATES MAGISTRATE JUDGE

Date: February 24, 2009
Richmond, Virginia